Indeed, the sole ground, apparently, upon which it is claimed that a right of action has already accrued, is that a default had taken place under the bond, by reason of which it had been agreed that the whole amount of its consideration should become due. There is no foundation, as we have seen, for a claim against Lee upon the bond, and no facts are alleged from which any other claim could be asserted against him. The demurrer to the complaint was therefore well taken, and the defendant should have had judgment upon it.

The judgment therefore must be reversed, with costs, and judgment ordered for the defendant upon the demurrer, with costs, with leave to the plaintiff to amend his complaint in 20 days, on payment of the costs of the demurrer and of this appeal. All concur.

---

GIBSON ELECTRIC CO. v. LIVERPOOL & L. & G. INS. CO. et al. SAME
v. LONDON & L. FIRE INS. CO. et al. SAME v. COMMERCIAL
UNION ASSUR. CO., Limited, OF LONDON et al.

(Supreme Court, Appellate Division, First Department. November 13, 1896.)

INSURANCE—FORFEITURE OF POLICY—WAIVER.

> An insurance company does not waive a forfeiture for breach of a condition in a policy by permitting an appraisal to proceed to an award after knowledge of the breach, where it was ignorant of the breach when it agreed to the appraisal, and the policy provided that no waiver should result from "any requirement, act, or proceeding * * * relating to the appraisal or to any examination," and nothing was done by the company to affect injuriously the insured, after notice of the breach, and before availing itself of the forfeiture.

Appeal from trial term, New York county.

Separate actions by the Gibson Electric Company against the Liverpool & London & Globe Insurance Company and another, the London & Lancashire Fire Insurance Company and another, and the Commercial Union Assurance Company, Limited, of London, and another, respectively, on fire insurance policies. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

The actions were brought by the Gibson Electric Company against the insurance companies upon three policies of fire insurance, known as "Standard Policies," issued by them to the appellant upon property located in the town of Chatham, Columbia county, N. Y. At the time of the issuing of the policies the premises upon which the buildings insured stood were incumbered by a mortgage held by one Job R. Furman, who was made a defendant in these actions upon his refusal to join the plaintiff in the action. The loss occurred on the 23d day of October, 1891. Prior to the fire, Furman began an action for the foreclosure of his mortgage by the service of a summons and complaint upon the Gibson Electric Company, mortgagor, and the insured in this action. That action of foreclosure was prosecuted to judgment, and the same entered October 20, 1891, and on October 31, 1891, the property was advertised for sale. After the entry of said judgment, and on the 11th day of November, 1891, an order to show cause was granted why the default of the Gibson Electric Company should not be opened, and the judgment and subsequent proceedings vacated, and subsequently the motion to open the default was granted; but, upon the action being brought to trial, final judgment was entered dismissing the complaint of Furman. On the 28th day of October,

1891, an agreement for submission to appraisers was executed by the plaintiff and the insurance companies. On the 4th day of November, 1891, while the appraisal was pending, and prior to the award, the insurance companies were notified of the interest of Furman as mortgagee. As a result, the agent for some of these companies visited the office of the lawyers from whom the notification had been received, and there obtained information in reference to the claim of Furman, and of the proceedings for the foreclosure of the Furman mortgage, and the entry of judgment thereon. The companies, after such knowledge, did not interrupt the appraisement, and it appears that in that connection the insured incurred trouble and expense, and submitted its books for examination, and prepared and filed proofs of loss up to the 4th day of December, 1891, when the award was made. On the 16th day of December, 1891, proofs of loss were served on the companies, and on the 17th they notified the insured that they did not recognize the loss or the validity of the policies because an action to foreclose a mortgage on the property, with the knowledge of the insured, had been commenced prior to the fire.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

A. B. Gardenier, for appellant.
John Notman, for respondents.

O'BRIEN, J.   The policies provide as follows:

"This entire policy, unless otherwise provided by agreement indorsed hereon and added hereto, shall be void if, with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of any sale of any property covered by this policy, by virtue of any mortgage or trust deed."

It was established, and we do not understand that it is disputed, that there was a violation of this condition by reason of the commencement of foreclosure proceedings after the issuance of the policies, with the knowledge of the insured, and that judgment of foreclosure and sale was entered before the happening of the fire.   In Quinlan v. Insurance Co., 133 N. Y. 356, 31 N. E. 31, this condition in the policy was under consideration, and it was held that its violation rendered the policy void.   See, also, Armstrong v. Insurance Co., 130 N. Y. 560, 29 N. E. 991; Baumgartel v. Insurance Co., 136 N. Y. 547, 32 N. E. 990; Allen v. Insurance Co., 123 N. Y. 6, 25 N. E. 309; Messelback v. Norman, 122 N. Y. 583, 26 N. E. 34; O'Brien v. Insurance Co., 134 N. Y. 28, 31 N. E. 265; Lett v. Insurance Co., 125 N. Y. 82, 25 N. E. 1088.

It is conceded that, the foreclosure proceedings having been commenced and ripened into judgment before the fire, this rendered the policy void.   But it is insisted that the acts of the insurance companies in proceeding with the adjustment of the loss after knowledge of the forfeiture waived it.   Upon this question of what would constitute a waiver we are referred to the leading case of Titus v. Insurance Co., 81 N. Y. 410, a case in many respects like this.   The differences, however, between the policies and the law relating thereto are marked and distinct.   Those here involved are standard policies, which went into effect in May, 1887 (chapter 488, Laws 1886), which form of policy among other things provides:

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal, or to any examination herein provided for."

Unlike, therefore, the policy involved in the Titus Case, the one here has a legal sanction for a provision which in express terms declares that no waiver shall result from "any requirement, act, or proceeding  *  *  *  relating to the appraisal or to any examination." In addition, we have the form of the appraisal agreement, and the separate appraisals as to the machinery and as to the building, items of the policies in evidence, expressly providing as follows:

"It being understood that this appointment and submission is without reference to any other questions or matters of difference within the terms and conditions of insurance, and is of binding effect only so far as regards the actual cash value of the loss and damage to said property."

The facts relied upon to show a waiver, consisting of the trouble and expense connected with making the proofs of loss and presenting for examination books and papers and in paying an appraiser, were all connected with the appraisement itself, and are therefore covered by the provision in the standard policy to which we have referred, and in that respect differ from the cases which have arisen under the old forms of policy, of which the case relied upon of Titus v. Insurance Co., supra, is the leading one. The last expression of the court of appeals bearing upon insurance policies is to be found in Kiernan v. Insurance Co., 150 N. Y. 190, 44 N. E. 698, which was an action to set aside an award, made by appraisers under a policy of fire insurance, as fraudulent and void, and to recover the amount of the policy. It does not appear in that case whether it was an old-form policy, or a standard. But an examination thereof we do not think will aid the appellant in sustaining its contention that the acts relied upon constituted a waiver; for while, as therein held, in conformity with a long line of decisions, an election by the company to insist upon the forfeiture of a fire insurance policy for breach of its conditions must be asserted within a reasonable time after acquiring knowledge of the breach,—which is not the case here,—it is also held that, when an appraisal of the loss under the fire insurance policy is proper in any event, the mere fact that one was had at the request of the company has no bearing upon the question of waiver or forfeiture. As therein said:

"The most of the acts of the company tending to show its intent to waive the forfeiture were independent of the appraisal, for some of them preceded while others followed it. They did not bear such a relation to it as to be excluded from consideration under the clause of the policy upon the subject of waiver. Without prolonging the discussion upon this point, we announce as our conclusion that the evidence, independent of all acts relating to the appraisal, sustains the finding of a waiver by the trial court."

Here all the acts relied upon to show a waiver were directly connected with the appraisement, and, as we have seen, as they were expressly provided against, they cannot now be relied upon, contrary to the provision in the policy, as effecting the very thing which those clauses were aimed at preventing. Upon the law, therefore, we think the learned trial judge was right in holding that there was no waiver, as he was equally right upon the facts, because it appeared that, at the time the appraisal was commenced, the companies had no knowledge of the foreclosure of the mortgage, and did not obtain it until some weeks afterwards, and there is no evidence

that the companies did anything to induce the insured to do anything or to incur any expense which would prevent them within a reasonable time insisting upon the forfeiture. It is true they permitted the appraisal to proceed to an award, and within a reasonable time thereafter they availed themselves of the forfeiture, and during that period, which was a short one, nothing was done by the companies to affect injuriously the insured, or induce it to change its position, or lead it to believe that, with full knowledge of the forfeiture, they had waived it.

We think the judgment was right, and should be affirmed, with costs. All concur.