[Civil No. 3231.   Filed October 18, 1932.]

[15 Pac. (2d) 249.]

I. D. PETERSON, Appellant, v. THE HUDSON INSURANCE COMPANY, a Corporation, Appellee.

Mr. V. L. Hash, for Appellant.

Messrs. Frazier & Perry, for Appellee.

LOCKWOOD, J.—I. D. Peterson, hereinafter called plaintiff, brought suit against Hudson Insurance Company, a corporation, hereinafter called defendant, to recover on a certain policy of fire insurance issued by defendant in favor of plaintiff and covering certain property located in Maricopa county. The case was tried to the court sitting without a jury upon an agreed statement of facts, and, judgment being rendered in favor of defendant, this appeal was taken.

The question therefore presented is whether upon such an agreed statement of facts the court properly rendered the judgment which it did. This statement may be summarized as follows: On October 30th, 1929, plaintiff was the owner of certain real estate in Maricopa county upon which there was a frame dwelling-house. On that day defendant issued to plaintiff a policy of fire insurance insuring the house against fire for the term of three years in an amount not exceeding $1,500. The policy, among other matters, contained the following clause: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if . . . with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed," which clause is part of the New York standard form of fire insurance required by the statute to be used in Arizona. On February 15th, 1930, some three and one-half months after the issuance of the insurance policy aforesaid, plaintiff mortgaged the premises in question to the J. D. Halstead Lumber Company, which mortgage was duly recorded in March, 1930. On October 15th, 1930, the lumber company commenced an action against plaintiff in the

superior court of Maricopa county to foreclose the mortgage, summons being issued and served the same day upon the plaintiff. No notice of the pendency of the action was filed in the office of the county recorder at any time, but on November 6th the default of plaintiff was entered, and on the sixteenth day of February, 1931, a judgment of foreclosure was entered in the suit, upon which execution was regularly issued. On March 24th the sheriff sold the real property and building covered by the mortgage to the J. D. Halstead Lumber Company, certificate of sale being issued on that date, but not recorded until October 17th, 1931. On the eleventh day of April, 1931, the building covered by the insurance policy was wholly destroyed by fire, being then reasonably worth the sum of $1,500. Shortly after the fire, plaintiff notified the Standard Insurance Agency, which was the local agent of the defendant, that he made claim to recovery under the policy herein sued upon, and it informed plaintiff that it did not have authority to either admit or deny liability, but would refer the matter to defendant's San Francisco office. This latter then sent it to the Phoenix office of the Fire Insurance Companies' Adjustment Bureau. Plaintiff called upon the Standard Insurance Agency and the Adjustment Bureau many times in respect to his claim, spending a good deal of time and some money in so doing, but could never get an express admission or disclaimer thereof, the bureau on the occasion of each call informing plaintiff that it was investigating the matter. Becoming tired of the delay, on the fifth day of November, 1931, he instituted this suit. It is further agreed that plaintiff had paid the defendant all the premiums due on said policy as and when due, and that defendant at no time had tendered the return to the plaintiff of any unearned portion of said premium or demanded the surrender of the policy, but it is admitted by plaintiff that, had such tender and demand been made

after the fire, he would have refused it. The policy contained no mortgage clause in favor of the Halstead Lumber Company, and the latter makes no claim thereunder, and it is stipulated defendant never in any manner waived, modified, changed or dispensed with the provision of said policy above quoted, or consented to the foreclosure proceedings, or any part thereof.

The real legal questions raised by the appeal may be stated thus: (1) Did the bringing of the foreclosure proceedings, as above set forth, render the policy in question void, unless reaffirmed by the insurer; (2) if it did, did the insurer waive its rights in any manner; and (3) if the insurer did not waive such rights, was it by its conduct estopped from claiming that the policy is void?

There has been considerable litigation in the different states over provisions of fire insurance policies, either exactly like the one in question or of similar effect, and there are two distinct lines of decisions upon the question, but it is a matter of first impression in Arizona, and we are therefore at liberty to follow the line which we think is most consistent with justice and our public policy. We have frequently had under consideration the construction of both fire and life insurance policies, and we think the general principles applicable to such construction are well set forth in the case of *Equitable Life Assur. Soc.* v. *Pettid*, 40 Ariz. 239, 11 Pac. (2d) 833, as follows:

"There are certain general principles which we must keep in mind in determining this question, as well as the more special ones to which we shall refer hereafter. These general provisions are: (1) An insurance policy is a contract, and in an action based thereon the terms of the policy must govern. The court cannot write a new contract for the parties in accordance with its idea of what the original one should have been. *Standard Life & Accident Ins. Co.* v. *Ward*, 65 Ark. 295, 45 S. W. 1065; *Brown* v.

*Conn. Fire Ins. Co.,* 52 Okl. 392, 153 Pac. 173. (2) In construing an insurance contract, where there is any ambiguity, or more than one possible construction of the provisions thereof, it is to be construed most strongly against the insurer and in favor of the insured. *United States Fidelity etc. Co.* v. *California-Arizona Co.,* 21 Ariz. 172, 186 Pac. 502; 32 C. J. 1152. (c) But, where the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there. *Treloar* v. *Keil & Hannon,* 36 Cal. App. 159, 171 Pac. 823; *Green* v. *National Casualty Co.,* 87 Wash. 237, 151 Pac. 509. And the rule that the policy is construed most strongly against the insurer applies only to the language of the contract and not to the facts of the case. *Hardenbergh* v. *Employers' Liability Assurance Corp.,* 80 Misc. Rep. 522, 141 N. Y. Supp. 502.''

The reason for the insertion in fire insurance policies of clauses similar to the one in question is explained in the case of *J. I. Kelly Co.* v. *St. Paul Fire & Marine Ins. Co.,* 56 Fla. 456, 47 South. 742, 16 Ann. Cas. 654, as follows:

''The temptation to destroy the property and with the funds derived from existing insurance thereon to pay off the mortgage demand is multiplied fourfold when legal proceedings are actually instituted, and the final loss of the entire property to the mortgagor thereby becomes imminent. As a safeguard against such a contingency, the quoted clause is wisely and properly inserted in such policies, and the plain meaning and proper and legitimate purpose of such a clause should not be emasculated and annulled by any process of specious reasoning or judicial special pleading. The plain meaning and purpose of the clause is that such a policy shall become void if, with the knowledge of the insured, foreclosure proceedings of any mortgage, whether executed by the insured or by another, covering any of the insured property,

shall be commenced during the life of the policy, unless there shall be an agreement indorsed upon or added to the policy providing otherwise.''

And we know of no case which holds that such an agreement is contrary to public policy, or, indeed, in any manner unfair or unjust. There is, however, a line of cases found in Idaho and Texas which greatly limits the application of such clauses. They are apparently based upon the theory that courts are reluctant to enforce a forfeiture of an insurance policy, and that the rule of strict construction against the insurer and in favor of the insured should be followed, especially when forfeiture is involved. These cases in substance hold that the clause only applies when the insured knows *before or at the time* the suit is first filed the intent of the holder of the mortgage to bring foreclosure proceedings, and that knowledge acquired subsequent to the filing of the suit is not within the terms of the clause. *Bellevue Roller Mill Co.* v. *London & L. Fire Ins. Co.*, 4 Idaho 307, 39 Pac. 196; *Philadelphia Underwriters' Agency* v. *Moore,* (Tex. Com. App.) 229 S. W. 490. So far as we are aware, these are the only states where this rule is followed.

Counsel for plaintiff has also cited to us in support of his position the cases of *Liverpool & London & Globe Ins. Co.* v. *Lavine,* 5 Ala. App. 392, 59 South. 336, and *Smith* v. *Grange Mut. Fire Ins. Co. of Michigan, Ltd.,* 234 Mich. 119, 208 N. W. 145. We think, however, on reading these cases that they do not bear out the construction placed upon them by counsel. The Alabama case, indeed, expressly states that such a clause is valid, but bases its decision upon the sustaining of a demurrer by the trial court to another paragraph of the complaint than the one which raised the question we are considering.

In the Michigan case the defendant admitted that the foreclosure did not render the policy void except

under circumstances not like those involved in the present case, and the opinion did not discuss the question raised herein.

The Supreme Court of California had the same question before it in *Schroeder* v. *Imperial Ins. Co., Ltd.,* 132 Cal. 18, 63 Pac. 1074, 84 Am. St. Rep. 17. Therein the court says as follows:

"A contract of insurance is to be interpreted by the same rules as are other contracts, and is to be so interpreted as to give effect to the mutual intention of the parties; and this intention is to be deduced, if possible, from the language of the contract. Civ. Code, §§ 1635, 1636; *Wells, Fargo & Co.* v. *Pacific Ins. Co.,* 44 Cal. 397; *Yoch* v. *Insurance Co.,* 111 Cal. 503, 44 Pac. 189, 34 L. R. A. 857. The above clause in the policy is included in that portion which enumerates many grounds for avoiding it, and it is manifest that the parties intended by these several clauses to agree that the defendant should not be liable upon the policy in case the risk that it assumed should be thereafter increased, unless its consent to such increased risk should be indorsed upon the policy. The provision above quoted is directed to the fact of knowledge on the part of the insured of the commencement of foreclosure proceedings, and not to the time at which he may obtain such knowledge, and the reasonable construction to be given to the clause is that whenever he shall have knowledge of the proceedings, and shall fail to obtain the consent of the insurer thereto, the policy shall be avoided. That the risk assumed at the date of the policy would be increased by foreclosure proceedings against the insured property was a fact well recognized in matters of insurance, and it has been held that a proviso in the policy that it shall be avoided by the commencement of foreclosure proceedings has that effect, even though the insured is ignorant thereof. *Titus* v. *Insurance Co.,* 81 N. Y. 410; *Meadows* v. *Insurance Co.,* 62 Iowa 387, 17 N. W. 600. It was doubtless for the purpose of overcoming the harshness of this rule that the standard form of policy limits this effect to those proceedings of which the insured has knowledge. This limitation is for the benefit of the insured, and

that he may have an opportunity to obtain the consent of the insurer to the increased risk, and pay an additional premium therefor, if it shall be demanded. The object of the clause is to provide against an increase of the risk, but such increased risk would not be varied by the knowledge or ignorance of the insured, and it may be assumed that the parties deemed it just that the insured should have an opportunity to procure the consent of the insurer thereto, and therefore provided that the policy should not be forfeited if the proceedings were had without his knowledge.

"It would be a solecism to speak of the insured having 'knowledge' of proceedings yet to take place. He might be informed of the purpose of the mortgagee to commence proceedings, and he might have a belief that they would be commenced, but this information or belief could not be termed his 'knowledge' of their commencement. It is equally unreasonable to assume that the parties intended by this clause to limit the provision avoiding the policy to proceedings of which the insured has knowledge at the identical moment of their commencement. These views find support in *Quinlan* v. *Insurance Co.*, 133 N. Y. 356, 31 N. E. 31 [28 Am. St. Rep. 645]; *Woodside Brewing Co.* v. *Pacific Fire Ins. Co.*, 11 App. Div. 68, 42 N. Y. S. 620; *Gibson Electric Co.* v. *Liverpool & L. & G. Ins. Co.*, 10 App. Div. 225, 41 N. Y. S. 675, affirmed in 159 N. Y. 418, 54 N. E. 23; *Norris* v. *Insurance Co.*, 55 S. C. 450, 33 S. E. 566 [74 Am. St. Rep. 765]; *Insurance Co.* v. *Brown,* 77 Md. 79, 25 Atl. 992."

The Idaho case above cited was then referred to, and the California court refused to follow that case or the reasoning thereof.

The conclusion arrived at by the California court has also been reached in many other jurisdictions. *Hartford Fire Ins. Co.* v. *Hollis,* 58 Fla. 268, 50 South. 985; *Jones & Pickett, Ltd.,* v. *Michigan Fire & Marine Ins. Co.,* 132 La. 847, 61 South. 846; *Royal Ins. Co.* v. *Drury et al.,* 150 Md. 211, 132 Atl. 635, 45 A. L. R. 582; *Findlay* v. *Union Mut. Fire Ins. Co.,* 74 Vt. 211, 52 Atl. 429, 93 Am. St. Rep. 885; *Hole* v. *Na-*

*tional Fire Ins. Co. of Hartford, Conn.,* 122 Kan. 328, 252 Pac. 263, 50 A. L. R. 1113; *Newark Fire Ins. Co.* v. *Pruett,* 75 Colo. 564, 227 Pac. 823; *Algase Co. et al.* v. *Corporation of Royal Exchange Assur. of London, England,* 68 Wash. 173, 122 Pac. 986; *Neil Bros. Grain Co. et al.* v. *Hartford Fire Ins. Co.,* (C. C. A.) 1 Fed. (2d) 904. We are of the opinion that the obviour purpose for which clauses of this nature are inserted in insurance policies can be carried out only by following the second line of cases above referred to. The reason for inserting them is the increased danger to the property, which human experience shows to accrue whenever foreclosure proceedings are started. It is not just that the insurer, having taken the risk for a certain price under certain conditions, should be forced to continue to carry the insurance when the risk is greatly increased, unless it has knowledge of that increased risk and acquiesces therein. The increased risk of fire does not accrue until such time as the *insured has knowledge* that the foreclosure proceedings have actually been commenced, and that he is about to lose his property. Such being the case, we think that the policy becomes void at such time after the suit is actually filed as the insured knows of its existence, unless the insurer, with knowledge of the changed conditions, either waives the clause in question or is estopped from asserting it.

We consider next the question of waiver. Waiver is a voluntary and intentional act. Although it is frequently confused with estoppel, the two are very different in their nature, one being based on the actual intent to give up a right, and the other, negativing such intent, being based on actual or constructive fraudulent conduct and the principles of equity. In the case at bar, there can be no question of waiver, for it is expressly stipulated in the statement of facts

that the defendant at no time in any manner waived the clause of the policy in contest.

The last question is that of estoppel. The essential elements of an estoppel are that the party estopped, with full knowledge of the facts, must have asserted a particular right inconsistent with the one which he later sets up, to the prejudice of another who has relied on his first conduct. *Moore* v. *Meyers,* 31 Ariz. 347, 253 Pac. 626. In the present case, it is obvious there is no estoppel. Defendant never at any time assumed any position inconsistent with that maintained in the present action. When proof of loss was first offered it, it states expressly to plaintiff that it would neither grant nor reject the demand at that time, but would investigate the situation thoroughly before acting. It had the right to make such investigation before committing itself, and not only does an assertion of a right inconsistent with that claimed in the present action fail to appear, but plaintiff has not changed his position to his prejudice by reason of any assertion made or position taken by defendant. Nor does the failure to return or tender the premium alter the situation, for it is stipulated plaintiff would not have accepted it, and a useless tender is not required. 26 R. C. L., p. 624, and note. We have considered the other matters referred to by plaintiff in his brief, but think it unnecessary to discuss them. Under the facts as set forth in the agreed statement, we think the trial court properly rendered judgment in favor of defendant, and the judgment is therefore affirmed.

McALISTER, C. J., and ROSS, J., concur.